UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Christian S. Strong, et al.,

    Plaintiffs,

v.

Case No. 1:03-cv-00383

U-Haul Co. of Massachusetts, Inc.,
et al.,

Judge Michael H. Watson

    Defendants.

## OPINION AND ORDER

This matter is before the Court on defendants' motion for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure. Defendants' Rule 50 motion challenges the sufficiency of the evidence with respect to three of Plaintiffs' claims: (1) defective design; (2) failure to warn; and (3) punitive damages. For the reasons that follow, the Court denies defendants' Rule 50 motion.

The standard for ruling on a motion for judgment as a matter of law is essentially the same standard applied to a motion for summary judgment. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). The Court must determine whether a reasonable jury would find a legally sufficient basis to find for the party on the issue in question. Fed. R. Civ. P. 50(a)(1). Under *Reeves*, the Court must view the entire record, disregard all evidence of the moving party that the jury is not required to believe, and draw all reasonable inferences in favor of the nonmoving party. 530 U.S. at 150-

51. Moreover, the Court may not make credibility determinations or weigh the evidence. *Id.* at 150.

## I. Design Defect

The essential elements of a design defect claim are:

(1) There was a defect in the subject product;

(2) The defect existed at the time the product left the defendants' control; and

(3) The defect was a direct and proximate cause of the plaintiffs' injuries or losses.

*State Farm & Casualty Co. v. Chrysler Corp.,* 37 Ohio St.3d 1, 5 (1988). A product is defective if it is more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner. *Carroll v. Alliant Techsystems, Inc.,* 2006 WL 3008472, at * 3 (Ohio App. 10 Dist. 2006).

Defendants do not challenge all of the elements of plaintiffs' design defect claim. Nonetheless, to provide a more complete analysis, the Court will briefly address them.

Plaintiffs' experts, John Sauer, Dr. John Lippold, and Dr. Allen Eberhardt, testified concerning three specific defects: (1) the failure to implement an appropriate inspection program as part of the design and implementation of the trailer; (2) defective welds; and (3) the use of a trailing arm of inadequate thickness. See Tr. Jan. 11, 2007 at 103-04; Tr. Jan. 11, 2007 at 226-27; Tr. Jan. 16, 2007 at 71. Dr. Eberhardt testified that the accident trailer was more dangerous than an ordinary consumer would expect. Tr. Jan. 16, 2007 at 72. The Court therefore finds that plaintiffs have satisfied the first element of their design defect claim.

Plaintiffs have adduced evidence through the testimony of U-Haul International

employees that U-Haul International was the manufacturer of the accident trailer and continued to exert control over the maintenance and inspection of the accident trailer through May 2002. U-Haul of Massachusetts and Ohio also exercised control over the accident trailer through May 2002, and is a manufacturer to the extent it undertook the conversion of the trailer from a garden trailer to a motorcycle trailer. Consequently, plaintiffs have satisfied the second essential element of their design defect claim.

Plaintiffs' expert Dr. Eberhardt offered testimony that the defects in the accident trailer's suspension system caused the May 25, 2002 accident. Tr. Jan. 16, 2007 at 72. Plaintiffs' respective physicians testified that plaintiffs' injuries were caused by the accident. Accordingly, the Court finds that plaintiffs have satisfied the third element of their design defect claim.

Defendants argue Plaintiffs must also adduce evidence of a feasible alternative design to prevail on their defective design claim. Both the Sixth Circuit and Ohio courts require such proof. *See McGrath v. General Motors Corp.*, 26 Fed. Appx. 506, 509-11 (6th Cir. 2002); *Nationwide Mut. Ins. Co. v. Icon Health and Fitness, Inc.*, 2005 WL 1252543, at * 2, 4-5 (Ohio App. 10 Dist. 2005). Plaintiffs argue that Ohio law does not require proof of an alternative design in a consumer expectation design defect case. The Court, however, finds that none of the decisions Plaintiffs cite stand for that proposition. Accordingly, to succeed on their design defect claim, Plaintiffs must show the existence of a feasible alternative design.

Plaintiffs have introduced evidence through their experts showing the alleged defect in the accident trailer's axle could be cured by: (1) an appropriate inspection program as part of the design and implementation of the trailer (Tr. Jan. 11, 2007 (Mr.

Sauer)); (2) fatigue resistant welds (Tr. Jan. 11, 2007 at 213(Dr. Lippold)); and/or (3) a significantly stronger trailing arm(Tr. Jan. 16, 2007 at 71 (Dr. Eberhardt)). Moreover, defendants' witness Jim Kitzmiller of Henschen testified that Henschen made one-inch thick trailing arms in 1983 that would have cost defendants only sixteen to twenty dollars more per axle. Tr. Jan. 24, 2007 at 126-29. Drawing all reasonable inferences in Plaintiffs' favor, the Court concludes that Plaintiffs have introduced sufficient evidence such that a reasonable jury could find Plaintiffs have proven the existence of feasible alternative designs by a preponderance of the evidence.

For the above reasons, the Court concludes that defendants are not entitled to judgment as a matter of law on plaintiffs' design defect claim.

## II. Failure to Warn

Defendants next challenge plaintiffs' failure to warn claims. The Court will begin its analysis by examining the essential elements of plaintiffs' failure to warn claims.

To succeed on a statutory strict liability failure to warn claim under Ohio law, plaintiffs must prove the essential elements of one of the following two alternatives:

### (A)

At the time the product left the defendant's control,

(1) Defendants knew or, in the exercise of reasonable care, should have known, about a risk that is associated with the product and that allegedly caused Plaintiffs harm;

(2) Defendants failed to provide the warning or instruction that a manufacturer exercising reasonable care would have provided concerning that risk, in light of the likelihood that the product would cause harm of the type claimed by Plaintiffs and in light of the likely seriousness of that harm; and

(3) the failure to provide the warning or instruction was the proximate

cause of Plaintiffs' injuries.

- OR -

**(B)**

It was defective due to inadequate post-marketing warning or instruction if, at a relevant time after it left the control of its manufacturer,

> (1) The manufacturer knew or, in the exercise of reasonable care, should have known, about a risk that is associated with the product and that allegedly caused the plaintiff's harm;
>
> (2) The manufacturer failed to provide the post-marketing warning or instruction that a manufacturer exercising reasonable care would have provided concerning that risk, in light of the likelihood that the product would cause harm of the type claimed by the plaintiff and in light of the likely seriousness of that harm; and
>
> (3) the failure to provide the warning or instruction was the proximate cause of Plaintiffs' injuries.

Ohio Rev. Code § 2307.76.

To succeed on a common law claim of negligent failure to warn, plaintiffs must prove each of the following essential elements:

> (A) Defendants were the manufacturers and/or suppliers of the motorcycle trailer;
>
> (B) Defendants knew or should have known of the risks or hazards of the motorcycle trailer;
>
> (C) Defendants negligently failed to warn users by failing to provide information which they possessed and which they should have known was necessary to make use of the motorcycle trailer safe for users and those in whose vicinity the motorcycle trailer was to be used;
>
> (D) such a warning by the Defendants would have allowed the user to use the motorcycle trailer safely; and
>
> (E) the failure to warn was the proximate cause of Plaintiffs' injuries.

See *Crislip v. TCH Liquidating Co.*, 52 Ohio St.3d 251 (1990). Synthesizing the above,

the basic common elements of all of plaintiffs' failure to warn claims are: (1) defendants knew or should have known of the risks associated with the product; (2) defendants failed to warn plaintiffs about those risks; and (3) the failure to warn was the proximate cause of plaintiffs' injuries.

The testimony of defendants' own employees establishes that defendants were well aware of the risks associated with towing a trailer, including the risks posed by towing at speeds greater than forty-five miles per hour, and how a driver needs to react to combination disturbances. Tr. Jan. 10, 2007 at 86-87; Smith depo. at 31, 95.[1] Hence, plaintiffs have satisfied the first element of their failure to warn claims.

Defendants provide warnings and instruction to consumers by only two means: (1) decals on the trailers warning consumers that the maximum recommended towing speed is forty-five miles per hour, and (2) a user instruction booklet that should be provided to the consumer in all rental transactions that warns consumers about the maximum recommended speed as well as how drivers should respond to combination disturbances. It is undisputed that the accident trailer did not have legible warning decals. Smith depo. at 22. Moreover, Christian Strong testified that neither he nor his wife Mindy Strong received the user instruction booklet when they rented the accident trailer. See Tr. Jan. 8, 2007 at 133-39. The Court finds that plaintiffs have satisfied the second element of their failure to warn claims.

Defendants argue that Plaintiffs are unable to show that defendants' failure to warn was the proximate cause of Plaintiffs' injuries. Ohio law requires a two-part inquiry

---

[1] The user instruction booklet states, "Failure to read and follow all instructions in this booklet may result in serious injury or death." Smith depo. at 76.

to determine proximate cause in a failure to warn case:

> Under Ohio law, a plaintiff asserting a products liability "claim[ ] based on failure to provide adequate warnings not only must convince the fact finder that the warning provided is unreasonable, hence inadequate, but he also must establish the existence of proximate cause between the [product] and the fact of the plaintiff's injury."*Seley v. G.D. Searle Co.,* 67 Ohio St.2d 192, 423 N.E.2d 831, 838 (Ohio 1981) (applying products liability law to pharmaceutical drug). "In analyzing the proximate cause issue as it relates to failure-to-warn cases," the Ohio Supreme Court "divided proximate causation ⋯ into two sub-issues: (1) whether lack of adequate warnings contributed to the plaintiff's [use of the product], and (2) whether [use of the product] constitute[d] a proximate cause of the plaintiff's injury." *Id.* With respect to warnings and plaintiff's use of the product, the Ohio Supreme Court interprets the Restatement (Second) of Torts § 402A cmt. j to
>
> establish[ ] a presumption that an adequate warning, if given, will be read and heeded. In such a situation, the presumption established works to the benefit of the manufacturer. However, *where no warning is given, or where an inadequate warning is given, a rebuttable presumption arises, beneficial to the plaintiff,* that the failure to adequately warn was a proximate cause of the plaintiff's [use of the product]. This presumption, absent the production of rebutting evidence by the defendant, is sufficient to satisfy the first branch of the plaintiff's proximate cause burden.
>
> *Id.* at 838 (emphasis added). Thus, as here, when plaintiff alleges no warning or inadequate warning, Ohio law establishes a presumption, beneficial to the plaintiff and which the defendants must rebut, to establish proximate cause in the warning defect context.

*Hisrich v. Volvo Cars of North America, Inc.,* 226 F.3d 445, 451 (6th Cir. 2000)(quoting *Seley v. G.D. Searle & Co.,* 67 Ohio St.2d 192, 199 (1981)).

Defendants assert that plaintiffs would not have read any warnings if they had been provided. This assertion is based in part upon plaintiffs' failure to read vehicle owner manuals and their failure to wear motorcycle helmets. Tr. Jan. 9, 2007 at 51. Mr. Strong, however, testified that if he had received the warnings, he would not have rented the trailer. Tr. Jan. 8, 2007 at 129, 136-37, 139. Moreover, under *Hirich* and

*Seley,* plaintiffs are entitled to a presumption under Ohio law that the failure to warn caused the plaintiffs' use of the trailer. *Hirich,* 226 F.3d at 451; *Seley,* 67 Ohio St.2d at 199. Drawing all reasonable inferences in plaintiffs' favor, the Court finds that a reasonable jury could find in plaintiffs' favor on the first element of proximate cause under *Hirich* and *Seley.*

Plaintiffs also contend that proximate cause is established by defendants' answer to plaintiffs' interrogatory concerning cause. In their answers to plaintiffs' interrogatories, which U-Haul representative Ted Draper verified during the trial, defendants stated that the accident was caused by failure to control and excessive speed. Tr. Jan. 10, 2007 at 92-100. The Court finds that a reasonable jury could find that plaintiffs have satisfied the second element of proximate cause under *Hirich* and *Seley.*

The Court concludes that a reasonable jury could find in plaintiffs' favor on the issue of proximate cause. Plaintiffs have therefore met the third element of their failure to warn claims.

For the above reasons, the Court concludes that plaintiffs have satisfied the essential elements of their failure to warn claims.

Defendants additionally argue that plaintiffs' failure to warn claim fails against U-Haul International because there is no evidence of the lack of adequate warnings when the accident trailer left the control of U-Haul International in 1983. Plaintiffs, however, have introduced the deposition testimony of U-Haul International employee Justin Smith indicating that U-Haul International continued to exert control over the warnings to be given with the accident trailer through May 2002. Smith Depo. At 37-42. Furthermore,

U-Haul International employee Russell Johnson confirmed that U-Haul International had the authority to manage the safety inspection process through May 2002. Johnson Depo. at 46-48, 95-98. Drawing all reasonable inferences in plaintiffs' favor, the Court finds that U-Haul International continued to exercise control over the accident trailer through May 2002. The Court therefore rejects defendants' argument.

Defendants next argue that plaintiffs' failure to warn claim fails as a matter of law because the risks associated with the trailer were a matter of common knowledge. "A product is not defective due to lack of warning or instruction or inadequate warning or instruction as a result of the failure of its manufacturer to warn or instruct about an open and obvious risk or a risk that is a matter of common knowledge." Ohio Rev. Code § 2307.76(B). Defendants refer to the testimony of Christian Strong, who testified that driving more slowly with a trailer is common sense. Mr. Strong, however, also testified that he drove more slowly because of the weather conditions. Tr. Jan. 9, 2007 at 147-48. It is for the jury to decide how to evaluate Mr. Strong's testimony on this issue. Furthermore, the Court cannot say as a matter of law that defendants have conclusively demonstrated that the consequences of driving faster than forty-five miles per hour while towing a trailer, or the proper driver responses to combination disturbances, were a matter of common knowledge.

In sum, the Court finds that plaintiffs have adduced sufficient evidence such that a reasonable jury could find in their favor on their failure to warn claims.

### III. Punitive Damages

Lastly, defendants argue they are entitled to judgment as a mater of law on plaintiffs' claim for punitive damages. Under Ohio common law, a jury may award

punitive damages in a negligence action when the plaintiff shows by clear and convincing evidence that the defendant acted with conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm. *Preston v. Murty,* 32 Ohio St. 3d 344 (1987).

> When proceeding on the "conscious disregard" definition of malice under *Preston,* a punitive-damages claim requires proof of the defendant's subjective knowledge of the danger posed to another by his conduct. *Malone v. Courtyard by Marriott L.P.* (1996), 74 Ohio St.3d 440, 659 N.E.2d 1242, syllabus. "Since punitive damages are assessed for punishment and not compensation, a positive element of conscious wrongdoing is always required. This element has been termed conscious, deliberate or intentional. It requires the party to possess knowledge of the harm that might be caused by his behavior." *Preston,* 32 Ohio St.3d at 335, 512 N.E.2d 1174. "[A]ctual malice requires consciousness of the near certainty (or otherwise stated 'great probability') that substantial harm will be caused by the tortious behavior. Any less callous mental state is insufficient to incur that level of societal outrage necessary to justify an award of punitive damages. Therefore, it is evident that a reckless actor, who only has knowledge of the mere possibility that his or her actions may result in substantial harm, is not behaving maliciously." *Motorists Mut. Ins. Co. v. Said* (1992), 63 Ohio St.3d 690, 698, 590 N.E.2d 1228, citing *Preston,* 32 Ohio St.3d at 336, 512 N.E.2d 1174, and Prosser & Keeton, The Law of Torts (5th Ed.1984) 212-214, Section 34, overruled in part on other grounds, *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552, 644 N.E.2d 397. The defendant's motive for the tortious conduct is relevant in assessing the existence of actual malice: "[T]here is evidence upon which the jury could reasonably find that defendant acted with a motive to injure plaintiffs, sufficient to constitute actual malice for purposes of determining punitive damages." *Walsh v. Starck Van Lines* (Sept. 29, 1981), Franklin App. No. 81AP-102, 1981 WL 3489.

*Schmidt v. Derenia,* 158 Ohio App.3d 738, 743-44 (2004).

With respect to plaintiffs' failure to warn claims, the testimony of defendants' own employees establishes that defendants were fully aware of the need to provide warnings and instructions for the trailer. Tr. Jan. 10, 2007 at 86-88; Smith depo. at

31, 95.[2] The same witnesses acknowledged that defendants do not provide any incentives, or perform audits to ensure that the warnings are provided to all consumers. Smith depo. at 31. Defendants have never undertaken any study to determine how often user instruction booklets were distributed to renters, or how many warning decals on trailers were illegible or replaced in a given year. Smith depo. at 27-28, 31, 34, 96. Moreover, the user instruction booklets are kept behind the counter at the rental centers where customers cannot access them without the assistance of a U-Haul employee. Tr. Jan. 10, 2007 at 88. The Court finds that a reasonable jury could infer from the evidence that defendants consciously failed to take adequate steps to ensure that those warnings and instructions were provided to plaintiffs.

With respect to plaintiffs' design defect claims, plaintiffs rely on the following evidence to support punitive damages. First, plaintiffs assert that defendants perform no preventative maintenance on trailers. Plaintiffs note that defendants have a safety certification program, but assert that defendants have not demonstrated that it is effectively enforced. Moreover, U-Haul International used to pay for safety certifications, but ceased doing so. Tr. Jan. 10, 2007 at 72; Johnson depo. at 78; Korman depo. at 38.

Plaintiffs point out that U-Haul International selected a five-eighths-inch thick trailing arm, a design about $16-$20 cheaper than a one-inch thick trailing arm. Henschen's Jim Kitzmiller acknowledged that cracks in the welds would cause cracks in the base metal, leading to a potential fracture in the trailing arm. Tr. Jan

---

[2] See fn.1, supra.

24, 2007 at 121, 125-28. Mr. Kitzmiller confirmed that U-Haul did not ask Henschen to undertake any testing or analysis as to how axles would hold up in the field, the effects of fatigue, or otherwise determine their useful life. Tr. Jan. 24, 2007 at 111-18.

Plaintiffs also refer to fact that the Henschen axles on the garden trailers had been in use for almost twenty years. Simpson depo. at 36-37. U-Haul International employee David Simpson testified that the axles were susceptible to fatigue, and that he directed that the axles should be inspected to determine their condition before the conversion to motorcycle trailers was completed. Simpson depo. at 39. Mr. Simpson also confirmed that U-Haul International had never attempted to analyze the stresses on the axle or to determine their useful life. Simpson depo. at 62-71. Mr. Simpson acknowledged that neither U-Haul International nor Henschen had ever developed criteria for replacement of the axles. Simpson depo. at 148. Mr. Simpson testified that he was sure that the axles were evaluated for fatigue when the garden trailers were converted to motorcycle trailers. Simpson depo. at 57. He indicated that Jeff Korman, the "Trailer Project Manager," would have been responsible for these tasks. Simpson depo. at 39-40, 53, 59, 110, 151. Jeff Korman, however, testified that his only role in the conversion process was to change the front wall of the garden trailer to accept a motorcycle. Korman depo. at 20. The conversion instructions did not include any directive to inspect the axle. Korman depo. at 27-28.

Plaintiffs assert defendants have no protocol explaining how to inspect axles for wear, fatigue, or other damage, whether by visual inspection, inspecting the tires,

or some other means. Johnson depo. at 142, 146, 168.

Plaintiffs also seek to support their claim for punitive damages by suggesting that U-Haul representative Ted Draper was demoted for incurring costs he felt were necessary for customer safety. Tr. Jan. 10, 2007 at 19-20. Plaintiffs further point out that the maintenance log for the accident trailer indicates that one hour of axle repair was performed. Johnson depo at 81-82. Plaintiffs also aver the accident trailer received new tires on August 28, 2001, and again on September 18, 2001, due to wear. Johnson depo. at 87-90. Furthermore, the accident trailer did not receive a safety certification between June 2000 and May 2002, although it should have received at least twenty-four certifications during that period. Johnson depo. at 71-72, 74.

The Court finds that plaintiffs have submitted evidence from which a reasonable jury could infer that defendants acted with conscious disregard for the safety of others who might be harmed by the product by failing to take adequate steps to ensure that warnings and instructions were provided to plaintiffs. The Court further finds that plaintiffs have submitted evidence from which a reasonable jury could infer that defendants acted with flagrant or conscious disregard for the safety of others who might be harmed by the product in designing, maintaining and supplying the accident trailer. The Court therefore concludes that a reasonable jury could find in Plaintiffs' favor on the issue of punitive damages.

## IV. Disposition

For the aforementioned reasons, the Court finds that plaintiffs have introduced sufficient evidence to warrant submitting their design defect, failure to

warn, and punitive damages claims to the jury. Accordingly, defendants' motion for judgment as a matter of law (Doc. 446) is **DENIED.**

       **IT IS SO ORDERED.**

_____
**MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT**